1
2
3
4
5

MELODY A. KRAMER, SBN 169984
KRAMER LAW OFFICE, INC.
9930 Mesa Rim Road, Suite 1600
San Diego, California 92121
Telephone (858) 362-3150
mak@kramerlawip.com

6
7
8
9

J. MICHAEL KALER, SBN 158296
KALER LAW OFFICES
9930 Mesa Rim Road, Suite 200
San Diego, California 92121
Telephone (858) 362-3151
michael@kalerlaw.com

10
11
12
13

Attorneys for Plaintiff JENS ERIK SORENSEN,
as Trustee of SORENSEN RESEARCH AND
DEVELOPMENT TRUST

14
15
16
17

### UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, <br><br>                         Plaintiff <br><br>    v. <br><br> ALLTRADE TOOLS, LLC, a California Corporation; and DOES 1 – 100, <br><br>                      Defendants. <br> _____ <br> and related counterclaims. <br> _____ | Case No. 08-CV-232 BTM CAB <br><br> **DECLARATION OF MELODY KRAMER IN SUPPORT OF PLAINTIFF'S RESPONSE TO OSC RE STAY** |

I, MELODY A. KRAMER, declare:

1.     I am not a party to the present action.  I am over the age of eighteen.  I have personal knowledge of the facts contained within the following paragraphs, and could and would competently testify thereto if called as a witness in a court of law.

2.      At all times relevant herein I have been an attorney for Sorensen Research and Development Trust ("Sorensen"), Plaintiff in the above-captioned matter.

3.     This declaration is made in support of Plaintiff's Response to OSC Re Stay.

4.     In July 2007, Black & Decker filed a request for reexamination of U.S. Patent 4,935,184 ("'184 patent").   In December 2007, co-defendants to Black & Decker filed another request for reexamination.

5.     In the 13 months since filing with the USPTO, no office action – the first substantive step in a reexamination proceeding – has still not issued.

6.     On June 25, 2008, well-respected intellectual property blogger Dennis Crouch reported the results of a statistical analysis of USPTO reexamination figures for 2000+ reexamination certificates published since 2000. The copy of a report is attached herein as Exhibit B.

7.     On June 26, 2008, Professor Harold Wegner who has testified before Congress regarding patent reforms and is also a partner with Foley & Lardner (counsel for one of the *Black & Decker* case defendants) cited Dennis Crouch's research and added his own blistering critique of the PTO reexamination process. The copy of his email to Melody Kramer is attached herein as Exhibit C.

8.     In February 2008, Professor Wegner was also reported in the San Diego Intellectual Property Lawyers Association journal as stating that "today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years."   The article from this journal is attached herein as Exhibit D.

2.

9.    Additionally, Sorensen has conducted its own research and found over 90 completed reexaminations that took in excess of seven years to complete. Further, Sorensen found many other reexaminations for which no certificate has yet issued after many years in the reexamination process.

10.    The Court has indicated that the length of the reexamination is a primary factor in issuing a stay, and that anything beyond 2 years is unacceptable: "if nothing seems likely at the end of two years, then I don't know that I'm going to keep the stay. I mean, I think the odds are that I am not going to keep the stay in place." Relevant pages from August 20, 2008 hearing transcript are attached herein as Exhibit A.


SWORN TO under penalty of perjury of the laws of the State of California and the United States, this Thursday, August 28, 2008.


/s/ Melody A. Kramer

Melody A. Kramer, Esq.
Attorney for Plaintiff
mak@kramerlawip.com

1

2

# TABLE OF EXHIBITS

3

4

Exhibit A ................................................................................................................ 5

Exhibit B ................................................................................................................ 8

Exhibit C .............................................................................................................. 13

Exhibit D .............................................................................................................. 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

```
 1   any available avenues, if there are, to go after those third

 2   parties to make sure that is preserved.

 3           THE COURT:  You have to keep in mind that there are

 4   limits to this stay, and if the reexamination does not occur

 5   within a reasonable period of time -- and I'm kind of using      12:06:48

 6   approximately, so at midnight on the day that this is up I

 7   don't want to see a motion -- but I'm using approximately two

 8   years, and ten or 11 months of that two years is already used

 9   up.

10           MS. KRAMER:  Actually more than that.                    12:07:06

11           THE COURT:  Pardon me?

12           MS. KRAMER:  Actually more than that.  It has been

13   just over a year.

14           THE COURT:  Well, you know, we're getting into the

15   second year, and if nothing seems likely at the end of two      12:07:12

16   years, then I don't know that I'm going to keep the stay.  I

17   mean, I think the odds are that I am not going to keep the

18   stay in place.  So we are really only talking about another

19   year or so.

20           MS. KRAMER:  Well, that is correct.  However, most       12:07:27

21   of these companies have had notice of this for a longer

22   period of time.  But whatever the length of time is, we just

23   want to make sure that that evidence doesn't disappear.

24   That's all.

25           THE COURT:  Okay.  So, addressing those four items,      12:07:41
```

1   patent owner statement, and they can advise the Patent Office

2   immediately if they want to file that, if they want to file a

3   statement or not.

4           They chose not to file it, waited the full two

5   months, didn't file any statement with the Patent Office as          12:35:31

6   opposed to telling them.

7           And in the second request they did the same thing.

8   In the second request -- the first request is going to wait

9   for the second request, so there is four months of this ten

10  months.                                                              12:35:43

11          THE COURT:  That may be and you can raise that.  My

12  two years is two years when the ball is in the Patent

13  Office's PTO's court to deal with it; that if they can't get

14  it done within two years, then, you know, I start to wonder

15  whether I should be staying the proceedings.                        12:35:57

16          Because I saw somewhere that sometimes it can take

17  up to five years.  I don't find that acceptable.  There is

18  just no finality and there is lots of economic issues that

19  companies are involved with that they can't have this hanging

20  over their head for five years, plus the time of litigation.        12:36:14

21          So when I say two years, that means two years that

22  the Patent Office has had it to decide.  So you can argue

23  later on about, well, they didn't have it to decide.

24          And it's not two years -- like I said, I don't

25  expect a motion when we begin -- it's midnight of the               12:36:33

**EXHIBIT B**





**Jun 25, 2008**
**Ex Parte Reexamination Statistics II**

### Reexamination Results



To get some sense of the PTO's current *ex parte* reexamination practice, I looked at the 2000+ reexamination certificates that have been published in the Official Gazette since January 2000. There are three potential outcomes for any particular reexamined claim: validity affirmed; validity affirmed with an amendment; and cancelled. In addition, claims may be added.

**Outcomes**: From my sample, 71% of the completed reexaminations resulted in claims that were either amended or cancelled while only the remaining 29% resulted in all claims being confirmed. A much smaller number – 12% – of the reexaminations resulted in all claims being cancelled.

The middle ground: 59% had at least one independent claim confirmed while 50% included at least one amended claim. For the 34 completed design patent reexaminations, the single claim was confirmed as valid 16 times and cancelled 18 times.

**Timing**: The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).* The PTO's reported average and median are 24.0 months and 18.6 months respectively. The difference apparently comes from their inclusion of reexaminations from the 1980's and 1990's which had much lower pendency than more recent numbers. [PTO Data 1981-2007].

**Outcome & Timing**: Reexaminations that simply resulted in a confirmation that the the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams were much slower (averaging 45 months). Cases at the longer end of the spectrum often involved either BPAI appeals or lost files.



- Thanks to several Patently-O readers for showing me how to find reexamination certificates. I was able to use the Westlaw database for this search. (Remember law school and the free academic access). The data can be compiled from the PTO OG, but that would be a larger job. The PTO does maintain a list of all the issued reexamination certificates here.
- * I roughly calculated pendency by measuring the elapsed time from publication of a reexamination request to publication of the reexamination certificate.
- Reexamination Statistics I

Posted by Dennis Crouch in Academic Studies, Reexamination | Permalink | Comments (9)

**Jun 07, 2008**

**Patently-O Bits and Bytes No. 42: Two requests for help**

- What is the best way to search for reexamination certificates? Are these available through the PTO site?
- Does anyone have a good process flowchart for a university tech-transfer operation?
- Thanks! dcrouch@patentlyo.com

Posted by Dennis Crouch in Bits and Bytes, Reexamination | Permalink | Comments (20)

**Jun 05, 2008**

**Ex Parte Reexamination Statistics I**



Through its attorneys Microsoft requested *ex parte* reexamination almost thirty Avistar patents. In recent days, the PTO denied Microsoft's request in 14 of those cases.

Standing alone, this denial does not appear to be big news — except for the fact that over 95% of requests for ex parte reexamination are granted. In FY 2003–07, for instance, the PTO reviewed 2389 requests for *ex parte* reexamination and only denied the request in 105 cases. (4.4%). (At this point, there is some possibility that the denials are procedural as the documents are not yet available on PAIR).

To be granted, a reexamination request must present a "substantial new question of patentability" that affects at least one claim of a patent. The request must be based on a prior art patent or publication. Prior public use or sale are not admissible as evidence in an *ex parte* reexamination proceeding (although affidavits explaining the prior art publications is admissible).

In general, there has been a rise in requests for *ex parte* reexamination. As the chart below demonstrates, increase is entirely due to an increase in requests for reexamination that are filed by third parties.

**Ex Parte Reexamination Requests**

- Statistics are from the USPTO Annual Report FY 2007 and other annual reports.
- Avistar News Story
- IPRIORI keeps ex parte reexamination data continually updated here [LINK]

Posted by Dennis Crouch in Academic Studies, Reexamination | Permalink | Comments (16)

**May 22, 2008**

**Patently-O Bits and Bytes No. 36**



- **[Not a] Patent Race**: IPO released its annualy survey of top utility patent assignees. IBM again leads the way with over 3,000 utility patents issued in 2007. The organization leads the report with the interesting statement: "IPO DOES *NOT* INTEND TO ENCOURAGE MORE PATENTING IN U.S.". [LINK]

- **Tafas v. Dudas**: On May 19, the CAFC released its notice of docketing in the case — starting a 60 day clock for the PTO to submit its opening brief. I expect that they will take the entire time.
- **Inter Partes Reexaminations:** Joff Wild highlights a new report on PTO *Inter Partes* Reexaminations: "Without appeal, the average pendency period for inter partes re-exam is 43.5 months, much longer than the 28.5 months reported by the USPTO – a 95% confidence interval would put the pendency between 34 and 53 months....To date, there has never been a single inter partes re-examination that has gone through the entire re-examination process (including appeal) and made it to completion. Only three have ever received a decision by the Board of Patent Appeals and Interferences." [LINK][Report][Zura comments]
- **MBHB Snippets**: In the past, I have published several practice focused articles in MBHB's Snippets publication. The newest edition is now online. Articles include:
    - Aaron Barkoff, Patent Litigation Under a Future Biosimilars Act
    - Kevin Noonan, Follow-on Biologic Drugs and Patent Law: A Potential Disconnect?
    - Jim McCarthy & Marcia Ireland Rosenfeld, It's Not Easy Selling Green
    - Benjamin Huber, Seagate: Reports of the Death of Opinions of Counsel Have Been Greatly Exaggerated
    - [Read Snippets]

Posted by Dennis Crouch in Bits and Bytes, Reexamination | Permalink | Comments (4)

**May 12, 2008**
## RIM v. NTP Continues to Trouble Patent Office

Although *NTP v. RIM* settled years ago, the PTO's reexamination of NTP's patents have continued to plod along.                    In the background are allegations by NTP that PTO officials improperly (and covertly) met with RIM CEO Jim Balsillie and other RIM representatives regarding the ongoing (ex parte) reexaminations.

During *ex parte* reexaminatoin, third-party communications are strictly forbidden.  It is clear, however, that in the months leading up to the NTP settlement, the PTO was feeling a tremendous amount of political pressure from RIM as well as Congress and the Senate.

Now, Congressman Howard Berman has demanded information from the PTO regarding these meetings "hand-delivered" by "May 19, 2008."

"Did this meeting [with Balsillie and counsel] take place? What was discussed at this meeting? What is the USPTO's policy concerning ex parte communications between senior USPTO officials and parties who have an interest in the outcome of proceedings before the office? In what other instances, if any, did senior USPTO officials engage in similar ex parte communications with parties that had an interest in the outcome of a proceeding being conducted before the Office?"

Hopefully the Office will be able to provide Chairman Berman with a tidy set of evidence to clarify the rules and exactly what happened.

**Documents**:

- NTP's Allegations (8 MB) Check out pp 74+ and also pp 61 – 74.
- Time Article by Daren Fonda.
- Thanks to Hal Wegner and Greg Aharonian for the tip.

Posted by Dennis Crouch in Reexamination | Permalink | Comments (49)

**Feb 04, 2008**
## PubPat: Proposed Post-Grant Review Cuts-Out Public Interest

There is a possibility that a passed Patent Reform statute would eliminate third-party-requested reexaminations (*ex parte* and *inter partes*) and yet fail to create any substantive third-party initiated post-grant procedure to replace the current options.

In addition, the proposed post-grant review procedure would block a non-threatened party from challenging the validity of a patent more than a year after its issuance. In a letter sent today to the Senate reformers, Dan Ravicher of *PubPat* asks that third-party reexamination be preserved.  The non-profit groups such as PubPat and EFF have filed dozens of reexamination requests asking the PTO to invalidate "wrongfully issued" patents.

- PubPat Letter

**The Current Proposal Found in S.1145**: The proposed system of post-grant review would have two windows for third-party filings:

- First Window: Post-Grant oppositions filed by anyone within one year of issuance.  Patents reviewed in the first window would not be given any presumption of validity.
- Second Window: Opposition must be filed by party who has a likelihood of feeling "significant economic harm" based on the patent. A presumption of validity would apply in reviews within the second window.

The PTO would be required to complete its review work within 18 months. Post grant reviews would be conducted by a three-member panel of administrative judges rather than by examiners. Parties to the review may settle the case.

- PubPat Recent Successes:
    - Forgent Networks '672 "JPEG" patent: Broadest claims finally rejected; Patentee abandoned assertion of patent.
    - Columbia '275 Axel Cotransformation Patent: All claims finally rejected; Patentee abandoned assertion of patent.

- Microsoft '517 FAT Patent: Patentee modifies claims, which are allowed.
- Pfizer '156 Lipitor Patent: Patentee modifies claims, which are allowed.
- WARF Stem Cell patents and Gilead Tenofovir (AIDS drug) patents have had all claims non-finally rejected, but are still pending.

Posted by Dennis Crouch in <u>Reexamination</u> | <u>Permalink</u> | <u>Comments (8)</u>

**Aug 22, 2007**

**In Reexamination, PTO is Not Bound by District Court Claim Construction**

*In re Trans Texas Holding Corp.* (Fed. Cir. 2007)

Trans Texas holds two patents directed to a system of insulating both deposits and loans from inflationary and short-term interest rate fluctuations. In earlier litigation, a Texas district court construed various claim terms. Now, in reexamination, the PTO has taken a fresh look and offered its own interpretation of the claims.

Issue Preclusion (AKA Collateral Estoppel) traditionally blocks the *same parties* from relitigating the same issue in a later proceeding. CAFC caselaw has identified four elements of issue preclusion:

1. Identity of the issues in a prior proceeding;
2. The issues were actually litigated;
3. Determination of the issues was necessary for the prior judgment; and
4. The party defending against preclusion had a "full and fair opportunity to litigate the issues."

**Ex Parte Proceeding**: Although reexamination is an *ex parte* proceeding, the CAFC considers the PTO to be a "party" as any other outcome "simply makes no sense."

> The PTO is plainly a party to these appeal proceedings, and if it were not treated as a party, there would be no basis for even considering the application of issue preclusion in the first place.

Since the PTO did not have an opportunity to litigate the issue in the Texas district court, it cannot be bound by that decision.

> [T]he PTO was not even a party to the earlier district court litigation and cannot be bound by its outcome.

**Obviousness affirmed.**

Posted by Dennis Crouch in <u>Reexamination</u> | <u>Permalink</u> | <u>Comments (9)</u>

# EXHIBIT C



**Melody Kramer <freelancelaw@gmail.com>**

## Reexamination Reform: Structural Changes needed at the PTO, or Why Post-Grant Reform May be Meaningless

2 messages

---

**Wegner, Harold C. <hwegner@foley.com>**                    **Thu, Jun 26, 2008 at 9:38 AM**

Beyond *statutory* reforms, the new Director of the PTO must reallocate the $ 2 billion annual PTO budget to focus a far greater percentage on the Board and to shift more of the responsibility for reexamination to the Board.  The shameful fact not one single merits appeal in an *inter partes* reexamination under a law enacted in the *last century* has *ever* reached the Federal Circuit speaks for itself.

**_Faux_ Victory over _Ex parte_ Reexamination Backlogs:**

"All ex parte patent reexaminations pending for more than two years were processed to final determination."

*Two years*?  Really, just *two* years?  That's what the PTO claims in its latest Annual Report.  Statistics released on June 25, 2008, by Professor Dennis Crouch paint an entirely different picture.

**Nearly Eight (8) Years Pendency for Reexams that Reach the Federal Circuit**: For important reexaminations – measured by those that reach the Federal Circuit – the average pendency approaches eight (8) years.

**111th Congress Patent Reform**

: No matter what *statutory* changes are made in the coming Congress in 2009, and no matter what demands for "special dispatch" may be placed on the system, any post-grant system that relies upon the presently constituted Board is doomed to utter failure. The scant resources devoted to the appellate level in the United States versus Japan are an order of magnitude apart.

The attached paper introduces some of Prof. Crouch's work as well as comparative data involving the Japanese system which *does* properly allocate resources and which *does* avoid the backlog problem faced in the United States.

Regards,

Hal

Exhibit C Page 14

# *Ex Parte* Reexamination Reform

**Three Year Average Reexamination Pendency\***



*"All ex parte patent reexaminations pending for more than two years were processed to final determination."*

-- **United States Patent and Trademark Office\*\***



Exhibit C Page 15

There are serious structural problems with U.S. reexamination – both *ex parte* and *inter partes.* At the heart of the matter are (a) insufficient resources put into the appellate level at the PTO *and* (b) the need to integrate the entire reexamination process under the auspices of the Board.

The $ 2 billion annual PTO budget needs to be reallocated to refocus resources on reexamination.

***Important Reexaminations Remain Pending Three-Plus Years***:  Many if not most *ex parte* reexaminations lose their commercial criticality after three years, resulting in either abandonment or acceptance of narrow claims after that period.

***Seven-Plus Years for Reexaminations Reaching the Federal Circuit:***

Stripping away the "easy" *ex parte* reexaminations – particularly those presented by the patentee himself – and those that involved commercial settlements (where the patentee often then accepts whatever narrow claims may be offered by the Examiner), the remaining reexaminations would have a much higher average pendency than the already unsatisfactory 33.3 month average.

To gauge the pendency of "important" reexaminations, a study was made of all reexaminations that have reached the Federal Circuit for a merits appeal.  The average pendency for a reexamination that involves a decision by the Federal Circuit remains at nearly eight (8) years.[****]

HCW

June 26, 2008

Exhibit C Page 16

Ex parte Reexamination Reform

## **Endnotes**

[*] The chart and data are taken from Professor Dennis Crouch, *Reexamination Statistics II, Patently O,* Ex Parte June 25, 2008.  His analysis explains the chart, which is based upon his "look[ ] at the 2000+ reexamination certificates that have been published in the Official Gazette since January 2000. * * *  *Timing:* The reexamination certificates in my sample had an average pendency of 33.5 months (median 28.5 months).  The PTO's reported average and median are 24.0 months and 18.6 months respectively. The difference apparently comes from their inclusion of reexaminations from the 1980's and 1990's which had much lower pendency than more recent numbers. [PTO Data 1981-2007].  *Outcome & Timing*: Reexaminations that simply resulted in a confirmation that the initial claims are valid were resolved more quickly (averaging 24 months) while those resulting in cancellation of all clams were much slower (averaging 45 months). Cases at the longer end of the spectrum often involved either BPAI appeals or lost files." *Id.*

**United States Patent and Trademark Office Annual Report (2007).

***Data is taken from a paper circulated in 2007, *Patent Reform in the 110th Congress:  Lessons from Tokyo* (*attached*), which includes original U.S. PTO and Japan Patent Office documentation.

**** This data has been previously reported by the present writer in a series of notes and appears in a table, *Ex Parte Reexaminations Pendency for Proceedings involving a Federal Circuit Appeal* (attached).

Exhibit C Page 17

# *Ex Parte* Reexamination Pendency for Proceedings involving a Federal Circuit Appeal[*]

## Average Reexamination Pendency = 7.7 years

| Reexamination Proceeding | Pendency (mos.) |
|---|---|
| *In re Kotzab*, 217 F.3d 1365 (Fed. Cir. 2000) | 50 |
| Filed November 1996 Certificate Jan. 2001 | |
| *In re Baker Hughes*, 215 F.3d 1297 (Fed. Cir. 2000) | 87 |
| Filed February 1994 Certificate May 2001 | |
| *In re McNeil-PPC, Inc*., 2000 WL 426148 (Fed. Cir. 2000) | 80 |
| Filed Nov. 1994 Certificate July 2001 | |
| *In re Fortunet, Inc.*, 2000 WL 420657 (Fed. Cir. 2000) | 89 |
| Filed October 1995  Certificate March 2003 | |
| *In re Lee*, 12 Fed.Appx. 915 (Fed.Cir. 2000) | 74 |
| Filed June 1995 Certificate August 2001 | |
| *In re Laitram Corp*., 1999 WL 1136829 (Fed.Cir. 1999) | 78 |
| Filed June 1993 Certificate December 1999 | |
| *In re Hiniker Co*., 150 F.3d 1362 (Fed. Cir. 1998) | 62 |
| Filed June 1995 Certificate August 2000 | |
| *In re Am. Acad. of Sci. Tech Center*, 367 F.3d 1359 (Fed. Cir. 2004) | 139 |
| Filed June 1994 Certificate January 2006 | |
| *In re Bass*, 314 F.3d 575 (Fed. Cir. 2002) | 106 |
| Filed January 1996  Certificate March 2005 | |
| *In re Morgan*, 87 Fed.Appx. 746 (Fed.Cir. 2004) | 51 |
| Filed August 2000  Certificate November 2004 | |
| *In re Curtis*, 354 F.3d 1347 (Fed. Cir. 2004) | 118 |
| Filed [merged reissue]: Sept. 1994 Est. [**] July 2004 | |
| *In re Inland Steel Co*., 265 F.3d 1354 (Fed. Cir. 2001) | 113 |
| Filed Jan. 1993  Certificate June  2002 | |
| *In re Modine Mf'g. Co.*,18 Fed.Appx. 857 (Fed.Cir. 2001) | 134 |
| Filed August 1995 Certificate October 17, 2006 | |
| *In re Icon Health And Fitness, Inc.*, __ F.3d __ (Fed. Cir. 2007) | 113 |
| Filed:  September 1998  Est. 2008[**] | |

---

[*]Search on Westlaw CTAF database for [ti("in re") and reexamination] to identify reexamination cases.  Search on on Lexis database for patent reexamination certificate  involved in the subject cases.

[**]Lexis does not show the issuance of a certificate for two of the cases.  For purposes of this survey a date six months after the January 2004 Federal Circuit decision date is used for the *Curtis* reexamination; similarly, a date six months after *In re Icon* Health is used.

HCW
Search updated August 5, 2007.

Exhibit C Page 18

# EXHIBIT D



Volume 11, Issue 10

February 2008

# SDIPLA News

### SDIPLA FEBRUARY 7, 2008, 6:00 P.M. DINNER MEETING
### FEATURING HAROLD C. WEGNER, ESQ.
### D.C. OFFICE OF FOLEY & LARDNER
### "PATENT REFORM IN CONGRESS" AND OTHER TOPICS
### SHERATON HOTEL LA JOLLA

Mr. Wegner will discuss Patent Reform in Congress, the PTO and the Courts: Senate "Cloture" and Necessary Compromises; and Judicial Challenges, Supreme Court Quanta "patent exhaustion"; and Kubin post-KSR biotechnology obviousness, and other challenges.

Mr. Wegner is a partner at the D.C. office of Foley & Lardner while continuing his teaching affiliation with the George Washington University Law School, where he was director of the Intellectual Property Program and professor of law. Mr. Wegner regularly operates in Japan, working with the firm's Intellectual Property Department. Mr. Wegner crafts strategies for multinational patent enforcement and management based on current intelligence on global intellectual property law and practice as well as cutting edge understanding of trends in patent case law.

Mr. Wegner was honored recently with the American Intellectual Property Law Association's President's Award for Outstanding Achievement for his long time efforts in mentoring and in advancing diversity within the legal profession and the AIPLA. Mr. Wegner holds degrees from Northwestern University (B.A.) and the Georgetown University Law Center (J.D.).

IN THIS ISSUE:
TABLE OF CONTENTS

Professional Profile:                    1

Internet Sightings                       2

Dinner Reservation Form                  4
Employment                               5
Announcement                             8

Membership Renewal Form                  9

**February 7, 2008 — Sheraton Hotel La Jolla:**

**Date/Time/Location:**
February 7, 2008
6:00 p.m.—8:30 p.m.
Sheraton Hotel La Jolla
3299 Holiday Court, La Jolla

**NOTES:**
Complimentary parking

**Directions:**
From I-5 S to La Jolla Village Drive;
Turn left, left on Villa La Jolla, left on Holiday Court
From I-5 N to La Jolla Village Drive;
Turn right, left on Villa La Jolla, left on Holiday Court

Volume 11, Issue 10                                          February 2008

### SDIPLA
### Board of Directors

**President**

Robert W. Prince
ACADIA Pharmaceuticals, Inc.
rprince@acadia-pharm.com

**Vice President**

Boris Zelkind
Knobbe Martens Olson & Bear LLP
619 235-8550
boris.zelkind@kmob.com

**Secretary**

Jessica S. Mitchell
Neil Dymott
619 238-2255
jmitchell@neildymott.com

**Treasurer**

John E. Peterson
John.e.peterson.ph.d@gmail.com

**Immediate Past President**

Thomas E. Coverstone
858 336-8620
patpend@sbcglobal.net

**Newsletter Editor**

Jessica S. Mitchell

**Webmaster**

Sarah Burrows

*Internet Sightings*
by Jim Hawes (cont. p. 3)

This column highlights some of the more notable recent internet notices, newsletters and blogs dealing with IP prosecution issues. It is a distillation of the submitted IS column. The full IS column, with compilations of some of the sources such as Hal Wegner's newsletter, should be up and available at www.internetsightings.com shortly.

**Hal Wegner's** newsletter – a lot of great stuff – Contact: hwegner@foley.com

•The 1/5/08 email states that today the average ex parte reexamination takes about 5 years (vs. the PTO's claim that it takes 2 years). If an appeal to the CAFC is involved, that extends the period to 7.7 years.
•Hal's 1/6/08 posting stresses the importance of a patent-savvy next President, and that now is the time to work towards that goal.
•The 1/7/08 newsletter attaches the CAFC's en banc order in the Egyptian Goddess design patent case, and lists the issues to be briefed.
•The 1/13/08 posting discusses the Commonwealth Scientific appeal to the CAFC from grant of an injunction; will address eBay inj. standards.
•Hal's 1/15/08 email reports the Baldwin Graphic decision of the CAFC and its discussion of "a," "the" and "said."
•The 1/22/08 posting discusses prospects for passage of the patent reform bill, which if it happens will happen in February according to the IPO.
•The 1/24/08 email reports that Senator Leahy has the votes to pass patent reform legislation in February. The AIPLA seems to be ignoring it.



The SDIPLA thanks our Sponsors for the monthly meetings:

**Knobbe Martens Olson & Bear LLP**
**www.kmob.com**

**Paul, Hastings, Janofsky & Walker LLP**
**www.paulhastings.com**

**Townsend and Townsend and Crew LLP**
**www.townsend.com**

(listed alphabetically)